IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Dorothy Ann Jackson,<br>Fiduciary of the Estate of<br>James E. Jackson, Deceased,<br><br>       Plaintiff,<br><br>  -vs-<br><br>A-C Product Liability Trust, et al.,<br><br>       Defendants. | Case No. 1:99 CV 10802<br><br>MEMORANDUM OPINION<br>AND ORDER<br><br>JUDGE JACK ZOUHARY |

**INTRODUCTION**

This is a maritime asbestos wrongful death case brought under the Jones Act. Plaintiff Dorothy Jackson alleges that her husband, James Jackson, died at the age of 64 of mesothelioma as a result of occupational exposure to asbestos during his work as a seaman aboard ships and in shipyards. Numerous defendants settled or were dismissed during the course of this case, which eventually went to trial against a lone defendant, Farrell Lines (Farrell), successor owner of the vessel *Executor*.

After a six-day trial, the jury returned a verdict in favor of Plaintiff in the amount of $8 million (Doc. No. 542). As part of its verdict, the jury found the *Executor* was seaworthy but that Farrell was negligent and that its negligence was a cause of Jackson's mesothelioma. The jury verdict was later reduced to $7.812 million after agreed-upon set-offs (Doc. No. 544). Defendant Farrell filed a Motion for Judgment as a Matter of Law or, in the Alternative, New Trial (Doc. Nos. 550, 566, 567, 575). Plaintiff opposed (Doc. Nos. 560, 578), and Defendant replied (Doc. No. 569), followed by oral argument (Doc. Nos. 579-80).

Farrell identifies five separate grounds for reversal of the jury verdict, each addressed below:

1. There was no evidence Jackson was exposed to hazardous levels of airborne asbestos aboard the *Executor*;

2. the jury verdict rested on improper expert testimony and faulty hypotheticals;

3. the amount of the jury verdict is excessive;

4. Juror No. 6 slept through significant portions of the trial; and

5. the Court gave an improper causation standard in the jury instruction.

### LEGAL STANDARD

Federal Civil Rule 59(a) provides that a "court may . . . grant a new trial on some or all of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . ." In *Holmes v. City of Massillon*, 78 F.3d 1041, 1045-46 (6th Cir. 1996), the court noted that the Sixth Circuit has interpreted Rule 59(a) to mean that "a new trial is warranted when a jury [reaches] a 'seriously erroneous'" result. A verdict is seriously erroneous when: (1) it is against the weight of the evidence; (2) the damages are excessive; or (3) the trial was "unfair to the moving party in some fashion." *Id*. at 1046.

**1. Plaintiff failed to show Jackson was exposed to hazardous levels of airborne asbestos aboard the *Executor*.**

Jackson worked for 33 years as a seaman, but sailed on the *Executor*, the vessel owned by Farrell's predecessor, for only 114 days (Tr. 575). While aboard the *Executor* from August 11, 1969 to December 2, 1969, Jackson held an entry-level position known as a wiper. His duties included general cleaning, washing down the engine room, mopping, chipping and painting (Tr. 377-78, 387, 575-80).

In order to make a successful claim against Farrell, Plaintiff must first establish that Jackson was exposed to asbestos aboard the *Executor*. Exposure cannot be presumed merely because he worked on board a vessel where asbestos materials were located. *Stark v. Armstrong World Indus.*, 21 F. App'x 371, 376 (6th Cir. 2001). Defendant argues there is no evidence of Jackson's exposure to hazardous levels of asbestos aboard the *Executor*, whereas Plaintiff claims there is direct evidence of such exposure from Jackson himself. Interestingly, each party cites to the same testimony of Jackson to support their opposing positions (Hearing pp. 2-17).

The testimony relied upon by both parties is as follows (Jackson Video Dep. pp. 36-37) :

Q. When you were on the ships early in your career, the High Point, Victory, the American Chieftain, the Executor, the Yukon and the Gulfpanther, did they have asbestos on the steam pipes back then?
A. Yeah.

Q. Okay. And were you involved with doing any maintenance on those pipes during that time?
A. (Witness moved head up and down.)

Q. Would it be the same thing, if you had a leak, you had to go fix it?
A. Same thing.

Q. Would there be dust created when you were doing that, when you were repairing the leak?
A. Dust created.

\* \* \*

Q Okay. Did you ever have to repair leaks in pipes outside of the engine room? If you had a leak somewhere else on the ship, would you be involved with helping repair that?
A. (Witness moved head up and down.)

Q. On occasion or not?
A. On occasion, yeah, in a salt -- saltwater leak, . . . .

Does the above testimony create a sufficient foundation for a reasonable jury to find that Jackson was exposed to asbestos aboard the *Executor*? This Court believes not.

This Circuit in *Stark, supra* at 376 (citations omitted), held that exposure cannot be presumed:

The plaintiff must also bring forward some evidence of actual cause; the mere "showing that the asbestos . . . was present somewhere at his place of work" is insufficient. We do not require that cause necessarily be established by expert testimony. Nonetheless, this court has expressed the concern that "defendants not be subjected to open-ended liability based solely on a jury's inexpert speculation on proximate cause . . . ."

*Stark* goes on to note that in a maritime asbestos case (*id.*) (citation omitted):

A plaintiff relying on circumstantial evidence of exposure to prove causation [must] show a high enough level of exposure that an inference that the asbestos was a substantial factor in the injury is more than conjectural. In other words, *substantial* exposure is necessary to draw an inference from circumstantial evidence that the exposure was a *substantial* factor in causing the injury (emphasis in original).

In the case before this Court, Jackson's testimony, quoted above, refers to six different ships where he worked early in his career. He did not testify that he was exposed to asbestos on the *Executor*. Rather, Jackson stated that *if* on *any* of these ships there had been a leak, he and others would repair it. He never testified that he in fact fixed any leaks on the *Executor*, let alone how often. Compare Jackson's testimony to that in *Stark*. There, the plaintiff also worked as a wiper but the evidence showed his responsibilities included climbing inside a boiler filled with asbestos-laden material, and plaintiff himself specifically testified to cleaning such a boiler on that vessel. Nonetheless, even there, the court affirmed judgment for defendant because plaintiff, although he had sufficiently identified an asbestos source, had only served aboard the ship for less than two months, and there was no testimony that he suffered harmful exposure during that time. The court concluded this was "insufficient for a rational jury to find this exposure was a 'substantial factor' in Stark's mesothelioma." *Stark, supra* at 381.

4

Plaintiff directs this Court to *Miller v. American President Lines*, 989 F.2d 1450 (6th Cir. 1993) as support that Jackson's testimony established the necessary substantial exposure. In *Miller*, plaintiff, again a wiper, died of mesothelioma after working on defendant's ships for nearly thirty years. Evidence established that plaintiff worked with asbestos in the engine room of these ships. Plaintiff's testimony in *Miller*, *supra* at 1464, was described as:

> . . . full of evidence concerning the presence of asbestos dust throughout the ships on which Moline lived and worked for prolonged periods, from the engine rooms where he labored as a wiper, reefer and electrician to the crew's living quarters. Asbestos-lined pipes ran inches from crew members' bunks and blanketed them with dust that vibrated free overnight during rough weather. [Finally] [c]rew members complained more than once of asbestos dust in their food.

That type of testimony simply does not exist in this case. No testimony was offered from coworkers aboard the *Executor*. Jackson made only general statements about asbestos pipes on several ships where dust would have been created *if* he had been called to repair a leak. But which ship, and how often? This testimony is too tenuous. Furthermore, in *Miller*, plaintiff served aboard defendant's ships for nearly thirty years, while Jackson served aboard the *Executor* for less than four months and did so alongside two other more experienced wipers. The "prolonged periods" of exposure referred to in *Miller* is missing here.

In summary, exposure cannot be presumed. *Stark, supra* at 376. While a jury can infer exposure from direct or circumstantial evidence, there must be *some* testimony to support the inference. It was incumbent upon Plaintiff to make an effort to connect his mesothelioma with his activities aboard the *Executor* during Plaintiff's relatively short work period aboard that ship in 1969. There is very little direct evidence of Jackson's actual work activities on the *Executor*, sparse circumstantial evidence of his specific exposure, and no evidence of the frequency or level of any alleged exposure. While the bar is not that high for Plaintiff to present a prima facie case, this scant

5

evidence falls short. This Court therefore finds that the verdict is against the clear weight of the evidence entitling Defendant to a new trial.

**2.   Expert opinions were based upon hypothetical questions with assumed facts nowhere in evidence.**

Defendant next attacks the expert testimony offered by Plaintiff, arguing *inter alia* that the expert opinions were based on hypothetical questions unsupported by the evidence.[1] Clearly it is proper for a party to pose hypothetical questions to experts. However, hypotheticals with assumed facts must have some support in the trial record.

A hypothetical question "should be an accurate summation of the evidence already presented in the record and can neither add to nor detract from that evidence." *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975) (reversing judgment for defendant in a disability case where defendant failed to present evidence, other than in the form of a hypothetical question, that plaintiff was able to perform another job).

Here, as discussed above, there was an insufficient foundation for a jury to conclude Plaintiff was exposed to asbestos aboard the *Executor*. This error was compounded by hypotheticals that included facts found nowhere in evidence. Experts then opined based on those hypotheticals that Jackson's exposure aboard the *Executor* was a significant contributing factor to his mesothelioma.

---

[1] Defendant also argues that Plaintiff failed to present expert testimony regarding what a reasonable shipowner knew or should have known in 1969 when Jackson served aboard the *Executor* and further that the expert testimony Plaintiff did offer was legally insufficient. Specifically, Defendant claims that Plaintiff's industrial hygiene expert (Selders) improperly testified based solely on studies that were not similar to Jackson's alleged work experience; Plaintiff's causation/pathology expert (Frank) improperly testified to scientifically unfounded theories; and another pathology expert's testimony (Hammar) was based on incorrect information about Jackson's work history and utilized a theory that has been rejected by the scientific literature. This Court need not address these additional arguments given its ruling granting a new trial on other grounds. *Jones v. Federated Financial Reserve*, 144 F.3d 961, 967 (6th Cir. 1998).

Specifically, the hypotheticals state in part:

Expert Hammar assumes -- "that as a wiper he was present in the engine room on a daily basis where there was thermal insulation being repaired and replaced on a weekly basis. And further that Mr. Jackson was in the proximity of others who were repairing steam pipes, removing gasket material and replacing and removing packing materials in those engine spaces during that time" (Tr. 95-96).

Expert Crapo assumes -- "And that in that engine room during the course of that three and a half month period he had the opportunity to work with thermal insulation by removing it or in proximity of others in doing that work and assisted those workers in cleanup" (Tr. 360).

Expert Frank assumes -- ". . . he was engaged in the duties of a wiper. And that during that time, he, himself, removed and replaced asbestos lagging and was in proximity of other coworkers who were doing those tasks" (Video Dep. p. 39).

Plaintiff does not, and cannot, correlate the specific facts in these hypotheticals (e.g., weekly repairs of thermal insulation, proximity to others exposed to asbestos, etc.) to any record testimony. Plaintiff cannot shore up inadequate exposure evidence with unsupported expert testimony. These faulty hypotheticals attempt to gloss over the missing facts. Nor can Plaintiff look to Defendant's experts to supply the missing evidence; a sufficient showing must be made during the case in chief.

Without a sufficient foundation, the expert testimony is meaningless. Hypothetical questions "must be based on facts supported by the evidence, and must be so framed that when answered will not result in presenting an unfair picture to the jury." *Ranger, Inc. v. Equitable Life Assurance Soc.*, 196 F.2d 968, 973 (6th Cir. 1952). For this additional reason, Defendant is entitled to a new trial.

### 3. The $8 million jury verdict is excessive.

Courts consider both the individual facts of a case and awards in similar cases to determine excessiveness of a jury award. *Nairn v. National R.R. Passenger Corp.*, 837 F.2d 565, 568 (2d Cir. 1988); *Knight v. Metro. Gov't of Nashville & Davidson County*, 136 Fed. App'x 755, 762 (6th Cir. 2005) (comparing awards in comparable cases from other circuits). *See also Strickland v. Owens*

7

*Corning*, 142 F.3d 353, 353 (6th Cir. 1998) (court held a $1.7 million award for asbestos exposure reasonable); *Berlin v. Celotex Corp.*, No. 89-6016,1990 U.S. App. Lexis 15313, at *9 (6th Cir. Aug. 29, 1990) (award of $2.4 million in an asbestos exposure case did not shock the judicial conscience).

Damages are excessive if they are above the amount "which, under the evidence in the case, was the maximum that the jury reasonably could find to be compensatory for the plaintiff's loss." *Hartzler v. Licking County Humane Society*, 740 F. Supp. 470, 481 (S.D. Ohio 1990).

A jury verdict is "excessive" if it "shocks the conscience" of the court. *See Lee v. Javitch, Block & Rathbone, LLP*, No. 1:06-cv-585, 2008 U.S. Dist. LEXIS 34166, at *13 (S.D. Ohio Apr. 25, 2008) (jury verdict is excessive if "it is (1) beyond the range supportable by the proof; (2) so clearly excessive that it 'shocks the conscience' of the court; [or] (3) is the result of passion, bias or prejudice. . . .") (citing *Gregory v. Shelby Cty.*, 220 F.3d 433, 443 (6th Cir. 2000)).

This Court concludes the award in this case of $8 million shocks the conscience, is beyond the range supported by the proof and beyond the range of awards for similar injuries in similar cases.[2] Simply put, this damage award "deviate[d] materially from what is reasonable compensation under the circumstances." *In re New York Asbestos Litigation*, 812 N.Y.S.2d 514, 515 (N.Y. App. Div. 2006) (reversing $8 million award for past pain and suffering in wrongful death mesothelimoa claim).

The evidence of damages came from the testimony of Dorothy and James Jackson. They wed in 1992, a second marriage for each. They each had children from prior marriages, but had no children together (Tr. 268). They retired in 2001 (Tr. 271). James became ill in July 2002 and was cared for

---

[2] Although not an objective yardstick, this Court notes that its announcement of the $8 million verdict in the courtroom resulted in unanimous expressions of shock from all the trial participants (Hearing pp. 40-41). The Court also reread the verdict forms several times prior to the announcement to make sure the Court was not mistaken as to the amount.

at home by Dorothy who was a registered nurse by profession (Tr. 277). James died ten months later in May 2003 (Tr. 272).

The parties stipulated to medical expenses of some $200,000; there was no claim for lost wages, support or other expenses. Closing arguments suggested no verdict and offered no guidance on arriving at a damage figure. The trial focus was liability -- damages were essentially ignored.

The jury instructions required "reasonable" and "fair" compensation, but this jury award is excessive. "A new trial is warranted where a jury reaches a 'seriously erroneous result,' either because the verdict was against the weight of the evidence, the damages were excessive, or the trial was unfair to the moving party." *Knight, supra* at 761 (*citing Holmes v. City of Massillon*, 78 F.3d 1041, 1046 (6th Cir. 1996)). Because in this case the award was clearly excessive, Defendant is entitled to a new trial.

### 4. Although Juror No. 6 slept through portions of the trial, Defendant fails to show prejudice.

Juror No. 6 was asleep for much of the trial. Defense counsel first raised the issue immediately prior to dismissal of the jury, after all evidence and argument had been presented (Tr. 841-42). This Court's own observation confirmed the juror "has been asleep during most of this trial." Defense counsel requested the juror not be allowed to deliberate. Plaintiff's counsel was asked to consent to her removal, but refused.

Upon reflection, this Court concedes that, even without the consent of Plaintiff's counsel, Juror No. 6 should have been removed. However, this Court cannot agree that this failure amounts to prejudicial error. There is simply no showing that this single juror (who was not the foreperson) out of twelve, affected the verdict.

9

It is within a court's discretion to remove a sleeping juror. *United States v. Upshaw*, 114 F. App'x 692, 711 (6th Cir. 2004). Where, as here, a sleeping juror is noted on the record but not removed, the standard is not as stringent for civil cases as it might be for criminal cases where Fifth Amendment and Sixth Amendment rights are impacted.

In *United States v. McFerren*, No. 96-5458, 1998 U.S. App. LEXIS 7199, at *15 (6th Cir. Apr. 8, 1998), the Sixth Circuit framed the issue whether "jurors seemed sleepy at times and fell asleep at others amounts to such a serious problem that would deny McFerren a right to due process." The judge and attorneys in that case kept a "watchful eye on the jury" and "[w]hen necessary, the judge admonished the jury to stay awake." *Id.* The Sixth Circuit found no cumulative error in the criminal trial proceedings. Because defendant did not move for a mistrial at the trial level on this particular issue, the standard on appellate review was merely plain error, which the petitioner failed to show. *Id.*

Sleeping during trial by a juror constitutes misconduct. *United States v. Sherrill*, 388 F.3d 535, 537 (6th Cir. 2004). But in order to warrant a new trial, the *effect* of the sleeping juror must have "prejudiced the defendant to the extent that he has not received a fair trial," and "not every incident of juror misconduct requires a new trial." *United States v. Hendrix*, 549 F.2d 1225, 1229 (6th Cir. 1977).

Generally, new trials have not been granted for a sleeping juror when only "general assertion[s] that jurors slept though [critical] parts" of the trial have been made. *United States v. Tierney*, 947 F.2d 854, 868-69 (8th Cir. 1991). Mere allegation is insufficient to show prejudice. *Id*; *see also Sherrill*, *supra* at 537 (where defendant made "only a vague assertion . . . that the juror was in fact sleeping, and that such behavior had a prejudicial effect on his defense," the trial judge did not abuse his

10

discretion in not granting a new trial). Similarly, "a fair trial presupposes careful attention by the jurors to all of the testimony." *Samad v. United States*, 812 A.2d 226, 230 (D.C. App. 2002) (holding that trial judge abused discretion after being informed that a juror was asleep and failing to inquire further, but that no prejudice had resulted).

When it is clear from the record, or the judge notices that a juror is asleep, *and* prejudice results, judicial action, including a new trial, is appropriate. *People v. Evans*, 710 P.2d 1167, 1167-68 (Colo. Ct. App. Div. II, 1985). Here, Defendant makes no showing of prejudice. This ground for a new trial is denied.

### 5. The Court gave a proper jury instruction on causation consistent with current Sixth Circuit law.

The jury in this case, over objection of Defendant, was instructed (Tr. 775-78):

You must determine whether Plaintiff's illness or death resulted in whole or in part from the negligence of Defendant. So if Jackson was injured because of his work aboard the *Executor*, and if Defendant's negligence played any part in causing his injury, then Jackson is entitled to receive reasonable compensation for his injury.

Defendant argues that the appropriate standard of causation under the FELA and the Jones Act is proximate cause and that the relaxed standard of "played any part" was erroneous. The Sixth Circuit has specifically held otherwise. *Van Gorder v. Grand Trunk Western*, 509 F.3d 265, 269 (6th Cir. 2007) ("FELA relaxes a plaintiff's standard of proof regarding causation"); *see also Fielden v. CSX Transportation*, 482 F.3d 866, 872 (6th Cir. 2007) (same); *Richards v. Conrail*, 330 F.3d 428, 433 (6th Cir. 2003) (same); *Robinson v. CSX Transportation*, 535 F. Supp. 2d 875, 877 (N.D. Ohio 2008) (same). Other Circuits have reached the same conclusion.[3]

---

[3] *See, e.g., Johnson v. Cenac Towing*, 544 F.3d 296, 302 (5th Cir. 2008) (stating the "Supreme Court has used the term 'slightest' to describe the reduced standard of causation . . ."); *Coffee v. NE Ill. Regional Commuter Railroad*, 479 F.3d 472, 476 (7th Cir. 2007) (suggesting that *Sorrell* stands for the proposition that the

11

Defendant's reliance on *Norfolk Southern Railway v. Sorrell*, 549 U.S. 158 (2007) centers on the concurrence of Justice Souter where he and Justices Scalia and Alito opined there was no "relaxed" causation standard in FELA (and by implication Jones Act) cases. The majority holding in *Sorrell* did not go that far. Therefore, until such time as the Sixth Circuit or Supreme Court either change or clarify the standard, the Court believes the instruction as given was accurate. This ground for a new trial is also denied.

## CONCLUSION

For the foregoing reasons, the Court finds the verdict was based on inadequate inferences of asbestos exposure; improper expert hypotheticals and testimony; and an excessive verdict which was not within the range of proof and which also shocked the conscience. The verdict was neither reasonable nor supported by the weight of the evidence.

Pursuant to Federal Civil Rule 50, Defendant's Motion for Judgment as a Matter of Law is denied; and pursuant to Federal Civil Rule 59, Defendant's Motion for New Trial is granted.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

March 31, 2009

---

common law standard of causation in FELA cases is a relaxed standard); *Summers v. Missouri Pacific Railroad*, 132 F.3d 599, 607 (10th Cir. 1993) (stating that the Supreme Court "definitively abandoned" proximate causation as the test in FELA cases); *Oglesby v. Southern Pacific Transportation*, 6 F.3d 603, 607 (9th Cir. 1993) (noting that "the Supreme Court indicated that the standard of causation required under the FELA differs from common-law proximate cause." Specifically, "the test . . . is simply whether . . . employer negligence played any part, even the slightest, in producing the injury or death from which damages are sought"); *Magelky v. BNSF Railway*, 579 F. Supp. 2d 1299, 1306 (D.N.D. 2008) (noting that FELA's "in whole or in part" causation standard "replaces the common law standard of proximate causation"); *Cook v. CSX Transportation,* 557 F. Supp. 2d 1367, 1371 (M.D. Fla. 2008) ("a relaxed standard of causation applies")*; Medwig v. Long Island Railroad*, No. 06 Civ. 2568(FM), 2007 WL 1659201, at *3 (S.D.N.Y. June 6, 2007) ("the Second Circuit has interpreted *Rogers* as giving rise to a 'relaxed standard for negligence as well as causation'").